**AFFIRM and Opinion Filed March 26, 2013**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-12-00817-CV
_____

### IN THE INTEREST OF T.A.D., A MINOR CHILD

**On Appeal from the 254th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 08-20368-R**

### OPINION

Before Chief Justice Wright and Justices Lang and Evans
Opinion by Chief Justice Wright

Mother appeals from a decree of termination of her parental rights to her son, T.A.D. In three issues, Mother contends generally that the evidence is legally and factually insufficient to support the trial court's findings that she committed acts justifying termination and that termination of her parental rights was in T.A.D.'s best interest. We overrule Mother's issues and affirm the trial court's judgment.

### Background

T.A.D. was born in a federal prison on February 22, 2006. Mother was in prison for possession of methamphetamine with intent to distribute. Mother voluntarily placed the child with Christ Haven for Children. Ronald and Johnnie Tripp became T.A.D.'s foster parents. T.A.D. lived with the Tripps for two and one-half years. When Mother was released from prison, she stayed in a halfway house in Tyler, Texas for approximately nine months. In August

of 2008, Mother moved to Irving, Texas and took custody of T.A.D. With the Tripp's help, Mother participated in the Brighter Tomorrows program designed to help single mothers with housing and getting a job. She found a job at Burger Street. The Tripps, who also live in Irving, continued to provide free childcare for T.A.D.

Mr. Tripp testified to three incidents in 2008 that caused him concern for the child. First, on the day before Thanksgiving, Mother dropped T.A.D. off at their house three hours before her shift began. When she failed to pick the child up on time, Mr. Tripp sent her a text asking where she was. Mother responded by text message, "Who's this?" Mother eventually texted that she was "somewhere" and could not pick the child up at that time. Mother picked the child up the following morning but did not give any explanation as to why she did not pick him up as scheduled. Second, in mid-December, Mr. Tripp bailed Mother out of a municipal jail in Grand Prairie. She had been charged with public intoxication. Third, on Christmas Eve, Mother did not pick up the child after work. Mr. Tripp went to her apartment and knocked on her door. When she did not answer, he looked in the window. Mr. Tripp said she was lying face down on her bed and appeared to be passed out.

A condition of the Brighter Tomorrows program was that participants not consume alcohol. In March of 2009, Mother was dismissed from the program. Around this time, T.A.D.'s Father moved in with Mother and the child. They were living in a duplex in Irving. In May of 2009, Father was involved in a car accident and was suspected of driving under the influence. T.A.D. was in the car with Father at the time of the accident. As a result of the car accident, the Texas Department of Family Protective Services (TDFPS) investigated the family. Father had a prior DUI. He was charged with a third DUI in 2011. Father was also charged with assault in March 2010 after he assaulted Mother. He said at the time of the assault, T.A.D. was

2

either asleep or at the Tripps.  At the time of trial, Father was serving a three-year sentence for "DWI third, DWI with child state jail, and domestic violence enhanced."  Father testified that he is an alcoholic.

On November 13, 2010, TDFPS received a referral for neglectful supervision of T.A.D. Mother and Father had gone to a clinic at Irving Bible Church for IV treatment for drug use. They brought T.A.D. with them. On the intake form, Mother and Father reported that they were IV drug abusers and admitted the same to a physician.

The referral was reassigned to Jessica Brown, an investigator with TDFPS.  After failing to meet with Ms. Brown at two scheduled appointments, Mother finally met with her on March 18, 2011.  At this meeting, Mother admitted that she and Father went to the clinic for help to get off heroin.  Mother told Ms. Brown that she was given suboxone to help with her addiction but that she no longer takes that medication.  She stated she was no longer using drugs.  When asked to submit to a drug test, Mother admitted to taking hydrocodone and said she would test positive for opiates.  Mother was unable to provide the prescription or the pill bottle for the hydrocodone. Mother refused to take a drug test and asked Ms. Brown to leave.  Ms. Brown called the police. T.A.D. was taken from the home and allowed to go home with Johnnie Tripp.

Mother and Ms. Brown signed a child safety evaluation and plan wherein Mother agreed to submit to a hair follicle drug test.  Mother failed to submit to the agreed-to drug test. Subsequently, Mother submitted to a drug test through her probation officer.  The test was positive for heroin.  At the time of trial, Mother was back in prison for probation violation resulting from the failed drug test.

At trial, Mother testified that T.A.D. was living with her when she began using heroin in October or November of 2010. She testified that when she was using heroin, T.A.D. was either asleep or at the Tripps. Mother also admitted that she used heroin from 2003 to 2005.

Mother testified that there had been some domestic violence between her and Father. She acknowledged that it was dangerous to T.A.D.'s emotional well-being to be exposed to domestic violence. There were two other instances when Mother called the Tripps to come get T.A.D. because of violence in the home. On one occasion, Father had torn up the front yard and broken things inside the home. On the other occasion, Father had assaulted Mother.

While in prison, Mother said she was completing a 500 hour drug abuse program. She completed the same program when she was in prison before. She was also enrolled in several parenting classes. She testified that she has done everything she can in prison to meet her service plan goals. She now feels that she has more control over her thoughts which will enable her to have control over her issues with substance abuse.

Mother testified that she stopped all drugs and alcohol when she found out she was pregnant with T.A.D. because she wanted him to be healthy. Mother testified that she has a twelve year old son who lives with her mother in Pennsylvania. Late in 2008, Mother became pregnant again. When she learned she was pregnant, she stopped drinking alcohol. The baby was born in August of 2009. Mother gave that baby up for adoption.

Mother is very appreciative of the Tripps for caring for T.A.D. She wants to work her way back into his life. If anyone were to adopt T.A.D., she would want it to be the Tripps. However, she is concerned that if the Tripps adopt T.A.D., she would have very limited contact with him.

The Tripps have four biological children and one adopted son. Two of their biological children are away at college. The Tripps live in a four bedroom house with a converted attic. Mr. Tripp works as an assistant controller for a professional services firm. Mr. Tripp testified that he and his wife have the financial means to care for all the children. The Tripps want to adopt T.A.D. The child is doing well in school and he attends counseling once a week. They would allow Mother to have supervised visits.

Mr. Tripp testified that T.A.D.'s parents tried to have a good relationship with the child but the child was not their top priority. After observing Mother and Father for over two years, Mr. Tripp said they are not willing to make the sacrifices necessary to provide a safe environment for the child. Mrs. Tripp testified that if T.A.D. returns to live with Mother, he will be at risk. She does not think Mother can ever be an effective parent for T.A.D.

Constance Powell, a caseworker for TDFPS, visits with T.A.D. on a monthly basis. She testified that he is doing very well at the Tripp's home and in school. On two occasions, T.A.D. has expressed to her that he wants to live with the Tripps.

### Standard of Review

The termination of parental rights is a matter that implicates fundamental constitutional rights. *In re S.N.*, 287 S.W.3d 183, 186 (Tex. App.—Houston [14th Dist.] 2009, no pet.). To terminate parental rights, the trial court must find, by clear and convincing evidence, that the parent has committed one of the acts prohibited under section 161.001(1) of the Texas Family Code and that termination of parental rights is in the child's best interest. TEX. FAM. CODE ANN. § 161.001(1), (2) (West Supp. 2012); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). Clear and convincing evidence is "proof that will produce in the mind of the trier of fact a firm belief or

conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2008).

In reviewing the legal sufficiency of the evidence in a parental termination case, we must consider all the evidence in the light most favorable to the finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that its finding was true. *In re J.O.A.,* 283 S.W.3d at 344; *In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002). We assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so, and we disregard all evidence that a reasonable fact finder could have disbelieved. *Id.*

In reviewing termination findings for factual sufficiency of the evidence, we consider and weigh all of the evidence. *In re J.O.A.,* 283 S.W.3d at 345; *In re J.F.C.,* 96 S.W.3d at 266. But we give due deference to the fact finder's resolution of factual questions. *In re C.H.,* 89 S.W.3d 17, 27 (Tex. 2002). We then determine whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re J.O.A.,* 283 S.W.3d at 345; *In re J.F.C.,* 96 S.W.3d at 266.

## Statutory Grounds for Termination

In her first two issues, Mother contends that the evidence is legally and factually insufficient to support the finding that she met the statutory grounds for termination. TDFPS moved for termination pursuant to subsections (D) & (E) of section 161.001 of the family code. Those subsections provide for terminating parental rights if a parent:

> (D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child; or

> (E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child.

6

TEX. FAM. CODE ANN. § 161.001(1)(D) & (E) (West Supp. 2012). To terminate parental rights under subsection D, the environment must endanger the child's physical or emotional well-being. Under subsection E, the parent must have engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being. The parent's conduct, either by acts or omissions, must endanger the child. *In the Interest of S.H.A.*, 728 S.W.2d 73, 85 (Tex. App.—Dallas 1987, writ ref'd n.r.e.). "Endanger" means to expose to loss or injury. *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996). Although endanger means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffer injury. *Id.*

If the evidence shows a course of conduct that has the effect of endangering the child's physical or emotional well-being, then a finding under section 161.001(1)(E) is supportable. *In re J.C.,* 151 S.W.3d 284, 288 (Tex. App.—Texarkana 2004, no pet.). Conduct that subjects a child to a life of uncertainty and instability may endanger the physical and emotional well-being of the child. *Id.* Furthermore, drug use and its effect on a parent's life and ability to parent may establish an endangering course of conduct. *Walker v. Tex. Dep't of Family and Protective Servs.,* 312 S.W.3d 608, 618 (Tex. App.—Houston [1st Dist.] 2009, pet. denied), ("Because [drug use] exposes the child to the possibility that the parent may be impaired or imprisoned, illegal drug use may support termination under section 161.001(1)(E).")

Because the evidence relating to subsections 161.001(D) and (E) are interrelated, we conduct a consolidated review. *See In re M.C.T.*, 250 S.W.3d 161, 169 (Tex. App.—Fort Worth 2008, no pet.). The evidence presented at trial shows that Mother began drinking soon after she regained custody of T.A.D. and she was arrested for public intoxication within four months.

7

Because of her drinking, Mother was dismissed from the Brighter Tomorrows program and lost her free housing. Thereafter, she began living with Father who is an alcoholic. He was arrested for DUI while the child was with him.

There were several instances of family violence between Mother and Father. Mother testified that when Father became violent, the child was either asleep or at the Tripps. On two occasions when Father became violent, Mother called the Tripps to pick up the child. However, Mother admitted at trial that being around violence endangered T.A.D.'s emotional well-being. In her brief, Mother implies that her calling the Tripps showed good parental judgment. It was also around this time that Mrs. Tripp observed T.A.D. demonstrating angry and aggressive behavior. When T.A.D. returned to live with them, they got counseling for the child to address these issues.

Mother again began abusing drugs while T.A.D. was living with her. Mother testified that when she was injecting heroin the child would be asleep. Mother was frequently physically and mentally impaired from drug abuse while the child was in her care. As a toddler, T.A.D. was totally dependent on her for his care. In her impaired state, her ability to meet the needs of her child was also impaired. Mother's drug use ultimately led to the child's removal from her home and her return to prison.

The evidence shows that Mother was subjecting the child to a life of instability and uncertainty. As the trial judge stated, "I can't in good conscience roll the dice on this child one more time, so . . . ."

Based on the record before us, we conclude a reasonable fact finder could have formed a firm belief or conviction that Mother allowed the child to remain in surroundings that endangered T.A.D. We also conclude that a reasonable fact finder could have formed a firm

belief that she engaged in conduct and knowingly placed the child with a person who engaged in conduct that endangered the physical and emotional well-being of T.A.D. Thus, we hold that the evidence supporting termination under section 161.001(1) (D) & (E) of the family code is legally and factually sufficient. We overrule Mother's first two issues.

## Best Interests of the Child

Before terminating a parent's rights, the fact finder must find, in addition to one of the statutory grounds, that terminating the parent's rights is also in the child's best interest. *See* TEX. FAM. CODE ANN. § 161.001(2) (West Supp. 2012). In determining whether terminating the parent-child relationship is in a child's best interest, we must consider the following factors:

1. the child's desires;

2. the child's present and future emotional and physical needs;

3. the present and future emotional and physical danger to the child;

4. the parenting abilities of the persons seeking custody;

5. the programs available to the persons seeking custody to help promote the best interest of the child;

6. the plans for the child by those persons seeking custody;

7. the stability of the home or proposed placement;

8. the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

9. any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

At the time of trial, Mother was in prison due to her illegal drug use. Although she was taking a drug abuse program while in prison, she took the same program when she was in prison

the first time. During the two and one-half years that Mother had custody of T.A.D., she began drinking excessively, abusing drugs, and she allowed herself to stay in an abusive relationship. Mother testified at trial that she wants to work her way back into T.A.D.'s life. However, she did not offer any plans for how she would be able to meet her needs or those of her son. On the record before this Court, only uncertainty awaits T.A.D. if he were returned to Mother's custody.

By contrast, the Tripps provided T.A.D. with a stable environment for the first two and one-half years of his life. They continued to provide childcare for T.A.D. even after Mother regained custody. The Tripps have been a continual presence in the child's life since they brought him home from the hospital when he was two days old. T.A.D. has lived in their home for most of his life. The Tripps want to adopt T.A.D. and they have the financial means to care for him along with their other children. They have T.A.D. in counseling to address issues that arose while he was in Mother's custody. It is not surprising that T.A.D. expressed to his caseworker on more than one occasion that he wants to live with the Tripps.

Based on the record before this Court, we conclude the evidence is legally and factually sufficient to support the trial court's finding that termination of Mother's parental rights is in T.A.D.'s best interest. We overrule Mother's third issue.

We affirm the trial court's judgment.


/Carolyn Wright/
CAROLYN WRIGHT
CHIEF JUSTICE


120817F.P05

10



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF T.A.D., A MINOR
CHILD

No. 05-12-00817-CV

On Appeal from the 254th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 08-20368-R.
Opinion delivered by Chief Justice Wright.
Justices Lang and Evans participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee, the Texas Department of Family and Protective Services, recover its costs of this appeal from appellant, Julie Receskey.

Judgment entered March 26, 2013.

/Carolyn Wright/
CAROLYN WRIGHT
CHIEF JUSTICE

11