**AFFIRMED and Opinion Filed November 15, 2018**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

---

### No. 05-18-00705-CV

---

## IN THE INTEREST OF A.Ja.T., An.J.T., AND A.Jo.T., CHILDREN

---

### On Appeal from the 305th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. JC-17-00491-X

---

## MEMORANDUM OPINION

Before Chief Justice Wright, Justice Evans, and Justice Brown
Opinion by Chief Justice Wright

Mother and Father appeal the trial court's order terminating their parental rights to A.Ja.T., An.J.T., and A.Jo.T. In four issues, Mother contends generally the evidence is legally and factually insufficient to support the trial court's finding that termination was in the best interest of the children; the evidence is legally and factually insufficient to support the appointment of CPS as the managing conservator; and the trial court abused its discretion in failing to proceed with a jury trial. In a single issue, Father contends the trial court abused its discretion in denying his request for a jury trial. For the reasons stated below, we affirm the trial court's judgment.

### BACKGROUND

On May 22, 2017, the Texas Department of Family and Protective Services filed suit seeking temporary managing conservatorship of appellants' three children. The petition was supported by an affidavit from Dominique Clark, a caseworker for the Dallas County Child Protective Services Unit of the Protective and Regulatory Services (CPS), summarizing the

findings of her investigation. According to Clark, CPS received a referral alleging Mother's negligent supervision of her two-day-old twins. Mother had refused prenatal care, despite her "extreme iron anemia," and one of the newborns tested positive for marijuana and methamphetamine. The day after giving birth to the twins, Mother tested positive for marijuana and Father tested positive for marijuana and other controlled substances. Based on the parents' positive test results, the twins and their nearly two-year-old sister were removed from the parents to ensure their safety. Mother and Father agreed to all three children being placed with their paternal aunt (Aunt).

At trial, Aunt testified Father, her brother, called her and asked if she would be willing to take the children because one of the twins tested positive for marijuana. She agreed. CPS then called to confirm that she would take the children and to gather personal information for her background check. After Aunt passed the background check, CPS informed her that to keep the children, she would need to purchase two baby beds, a toddler bed, stroller, car seats, and clothes, and also informed her that she would need to move out of her one-bedroom apartment to accommodate the children. Aunt made all the necessary purchases and arrangements without any financial assistance from the parents.

Aunt testified that she works about 60 hours a week and has a support system for the children. She said the children attend daycare during the day and if she needs support outside of daycare hours, her mother or her other brother are available to help watch the children. Aunt has two biological children of her own as well. She testified that all five of the children "get along like brothers and sisters."

Regarding visitation, Aunt testified that when she first received the children, she would drive the three children to their parents' home. Aunt did this about four times, until the CPS worker told her that arrangement was inappropriate. Aunt then arranged for the parents to visit the children

at her home in Fort Worth. The parents came to her home to visit the children about three times. After an altercation between the parents and Aunt's other brother, Aunt moved the visits to a public location. The parents met her at a McDonald's to visit the children twice before failing to visit the children for six months. Then, just days before trial, they requested to "facetime" the children.

In contrast to Aunt's testimony, Mother testified that she works at McDonald's and has two other children, ages six and seven, who live with her aunt, who lives nearby. She explained that she pays child support to her aunt and visits them "almost every day." Mother lives in a three-bedroom house in Dallas with her grandmother and great-grandmother. She testified that it is difficult for her to visit the three children subject to this case because she does not have a vehicle and has difficulty getting from Dallas to Fort Worth. When asked about her future plans for the children if the court did not terminate her rights, she testified, "My future plans would be to get myself together. Like, I got a job. I just need a home for them to go to and I need to stop smoking marijuana. I love my kids."

At the time of trial, the children had lived with Aunt for nearly two years. Clark testified that CPS filed the petition due to the parents' drug use. Although its original goal was reunification, CPS was seeking termination, according to Clark, because Aunt told CPS she thought it was in the best interest of the children to have stability since their parents were not complying with the court's order and she was all they knew. Kayla Curry, a second CPS caseworker assigned to the case, testified CPS sought termination because Mother was not doing any of the required services and there was very little contact with the children. Carrie Poston, a CASA advocate, testified that all five of the children get along very well and Aunt "has provided stability, safety, and most importantly, [she] think[s] a loving environment for the children." Clark, Curry, and Poston recommended to the court that the children remain with Aunt and that Mother and Father's parental rights should be terminated.

On June 12, 2018, the trial court signed a Decree of Termination, in which it found both Mother and Father failed to comply with the court's order and termination of their parental rights was in the best interest of the children. The trial court appointed the Dallas County Child Protective Services Unit of the Texas Department of Family and Protective Services as the permanent managing conservator of the children.

## BEST INTEREST

To terminate parental rights, a trial court must find both a statutory violation and that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)–(2). In her first two issues, Mother challenges the legal and factual sufficiency of the evidence to support the trial court's best interest finding.

### 1. Standard of Review

Because termination of parental rights is complete, final, and irrevocable, the evidence in support of termination must be clear and convincing before a court may involuntarily terminate a parent's rights. *In re N.T.*, 474 S.W.3d 465, 474–75 (Tex. App.—Dallas 2015, no pet.). "Clear and convincing evidence" is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *N.T.*, 474 S.W.3d at 475 (quoting TEX. FAM. CODE ANN. § 101.007).

On appeal, we apply a standard of review that reflects the elevated burden at trial. *Id.* This means both legal and factual sufficiency review of a decree terminating parental rights requires a reviewing court to consider all the evidence to determine whether the fact-finder could reasonably form a firm belief or conviction that the grounds for termination are proven. *See In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). Further, under both the legal and factual sufficiency standards, we must defer to the fact-finder's determinations as to witness credibility. *N.T.*, 474 S.W.3d at 475.

In evaluating the evidence for legal sufficiency in a termination case, we view the evidence in the light most favorable to the finding. *In re T.A.D.*, 397 S.W.3d 835, 839 (Tex. App.—Dallas 2013, no pet.). We "consider all the evidence, not just that which favors the verdict," and we assume the fact-finder resolved disputed facts in favor of its finding if a reasonable fact-finder could do so. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam). We disregard all evidence that a reasonable fact-finder could have disbelieved or found to have been incredible. *See In re K.M.L.*, 443 S.W.3d 101, 116 (Tex. 2014).

When reviewing the factual sufficiency of the evidence supporting a termination finding, we ask whether, in light of the entire record, the evidence is such that a fact-finder could reasonably form a firm conviction about the truth of the allegations. *N.T.*, 474 S.W.3d at 475. We must give due consideration to evidence that the fact-finder could reasonably have found to be clear and convincing. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014). We then determine whether the evidence is such that a fact-finder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009).

**2. Applicable Law**

In reviewing a fact-finder's best interest finding, we consider several non-exclusive factors, including: (1) the child's desires, (2) the child's current and future emotional and physical needs, (3) current and future emotional and physical dangers to the child, (4) the parental abilities of those seeking custody, (5) the programs available to help those individuals promote the child's best interest, (6) those individuals' plans for the child, (7) the home's or proposed placement's stability, (8) the parent's acts or omissions indicating that the existing parent–child relationship is not a proper one, and (9) any excuse for the parent's acts or omissions. *In re M.J.P.*, No. 05-16-01293-CV, 2017 WL 655955, at *6 (Tex. App.—Dallas Feb. 17, 2017, no pet.) (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)). An absence of evidence of some *Holley* factors does not

preclude a finding that termination is in the child's best interest, particularly if undisputed evidence shows that the parental relationship endangered the child's safety. *In re A.R.M.*, No. 05-17-00539-CV, 2018 WL 1559820, at \*2 (Tex. App.—Dallas Mar. 30, 2018, no pet. h.) (mem. op.) (citing *N.T.*, 474 S.W.3d at 477).

### 3. Application

In her first two issues, Mother asserts the trial court erred in finding that termination of her parental rights would be in the best interest of the children because the trial court had a lesser alternative than termination available to it. According to Mother, the trial court should have instead granted Aunt permanent managing conservatorship and perhaps restricted Mother's visitation.

In this case, there is no direct evidence pertaining to the children's desires because the children were too young, the oldest being about four years old at the time of trial. However, Aunt testified that, although she makes it a point to explain to the children that she is their aunt and shows them pictures of their parents, the older child does not ask for her parents. Regarding the remaining factors, the record shows Aunt has openly taken responsibility for the children. Aunt has provided the children with stability and addresses their physical and emotional needs. Before taking the children, Aunt complied with all of CPS's required accommodations. Aunt provides for daycare for the children and has a support system to help her care for the children otherwise. According to Poston, who had been involved in the case for about a year by the time of trial and observed the children's living arrangements, Aunt "has provided stability, safety, and most importantly, [she] think[s] a loving environment for the children."

In direct contrast to Aunt's prompt attention to the children's needs, the record calls into question Mother's desire to address the current and future emotional and physical needs of the children, as well as her parenting abilities. The record shows Mother is a drug user and admitted at trial that she continues to smoke marijuana. When presented with a service plan to assist her

–6–

with reuniting with the children, Mother threw it in the trash. Mother admitted she did not attend the parenting classes and did not do the drug and alcohol assessment as required by the service plan. She failed two drug tests and did not show up for the third test. Mother has two other children she voluntarily left in her aunt's care because she was "going through something." Citing issues with transportation, Mother has visited the children in Aunt's care about seven times over the almost two-year period. She has provided very little, if any, financial support for the children. Based on the evidence at trial, we conclude a reasonable fact-finder could have formed a firm belief or conviction that termination of Mother's parental rights was in the best interest of the children. We overrule Mother's first two issues.

## APPOINTMENT OF CPS AS PERMANENT MANAGING CONSERVATOR

We now address Mother's fourth issue that the trial court abused its discretion by appointing Child Protective Services as permanent managing conservator of the children because the evidence is legally and factually insufficient to support the finding that it is in the children's best interest.

Because we have decided against Mother regarding her challenge to the portion of the trial court's order terminating her parental rights, that order has divested Mother of her legal rights and duties respecting the children. *See* TEX. FAM. CODE ANN. § 161.206(b); *In re D.K.W., Jr.*, No. 01-17-00622-CV, 2017 WL 6520439, at *5 (Tex. App.—Houston [1st Dist.] Dec. 21, 2017, pet. denied) (mem. op.). As a result, Mother does not have standing to challenge the portion of the order appointing CPS as permanent managing conservator of the children because any alleged error could not injuriously affect her rights. *D.K.W., Jr.*, 2017 WL 6520439, at *5 (affirming termination of mother's parental rights and holding that mother, who had been divested of her legal rights to child, had no standing to challenge conservatorship determination). We overrule Mother's fourth issue.

**JURY REQUEST**

In Mother's third issue and Father's sole issue, they challenge the trial court's decision to proceed with a trial to the bench despite having a jury present based on Father's jury demand. Mother contends the trial court abused its discretion in proceeding with a trial before the court because a jury trial had been scheduled, a jury panel was in the hallway, and Mother's counsel was present. Mother and Father were not personally present at the start of trial, but based on the record, it appears they showed up after the testimony of both Clark and Curry had concluded.

A party must object to proceeding without a jury when the case is called to trial or the argument is waived. *In re W.G.O. III*, No. 02-12-00059-CV, 2013 WL 105661, at *2 (Tex. App.—Fort Worth Jan. 10, 2013, pet. denied) (mem. op.). The record shows the parties failed to timely object to the trial court's denial of Father's perfected right to a jury trial. The parties were initially called at 9:45 a.m. Mother's and Father's counsel were both present on their behalves and counsel for all parties announced "ready." The trial court instructed them to return at 1:00 p.m. When they returned, the trial court acknowledged the case had been set for jury trial and that Mother and Father were not present. After waiting approximately fifteen minutes, the court announced it would proceed to trial before the court. Again, counsel for all parties announced they were ready and proceeded to trial without objection. It was not until after the State passed its first witness that Father's counsel inquired about the jury and indicated that he did not know how Father wished to proceed. Shortly thereafter, Mother's counsel stated, "Judge, if I may, I just also want to voice my objection to preserve error for my client with respect to the jury trial demand." This attempt to preserve error was untimely because the bench trial had already commenced. Therefore, we conclude Mother and Father waived any right to complain on appeal about the trial judge's alleged error. *See Vardilos v. Vardilos*, 219 S.W.3d 920, 923 (Tex. App.—Dallas 2007, no pet.). We overrule Mother's third issue and Father's sole issue.

We affirm the trial court's judgment.

/Carolyn Wright/
CAROLYN WRIGHT
CHIEF JUSTICE

180705F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF A.Ja.T., An.J.T.,
AND A.Jo.T., CHILDREN

No. 05-18-00705-CV

On Appeal from the 305th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. JC-17-00491-X.
Opinion delivered by Chief Justice Wright.
Justices Evans and Brown participating.


In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered November 15, 2018.